2010 ND 31

**Joe M. DUFNER, Plaintiff and Appellee**

v.

**Kerry A. TROTTIER, f/k/a Kerry A. Dufner, Defendant and Appellant.**

**Nos. 20090211, 20090251.**

Supreme Court of North Dakota.

Feb. 17, 2010.

Robert John Schultz, Fargo, ND, for plaintiff and appellee.

Theodore Thomas Sandberg, Grand Forks, ND, for defendant and appellant.

CROTHERS, Justice.

[¶1] Kerry Trottier appeals the district court's third amended judgment mod-

ifying her visitation and the district court's order denying an evidentiary hearing on her motion to modify custody. We affirm the modification of visitation, concluding the district court did not err by finding that a material change of circumstances existed and that the best interests of the children are served by modifying visitation. We reverse and remand the denial of an evidentiary hearing on the motion to modify custody, concluding the district court improperly considered its in-chambers interview with the parties' children to determine if Trottier established a prima facie case.

I

[¶ 2] Trottier married Joe Dufner in 1994, and they have two minor children together. Dufner works as a farmer in Buxton, North Dakota, and Trottier works as a coding specialist in Grand Forks, North Dakota. The parties lived in their Buxton home until their separation in 1999, after which Trottier moved to Grand Forks and Dufner remained in the marital home. The parties divorced in 2001 when the children were five and three years old. The district court granted Dufner primary physical custody of the children with Trottier receiving visitation three weekends a month, alternating holidays and the majority of the children's summer vacation. The weekend visits began on Friday at 5:30 p.m. and ended on Sunday at 7:30 p.m.

[¶ 3] Both Dufner and Trottier have remarried. Dufner and his wife live in Buxton, and Trottier and her husband live in Grand Forks. The parties' children are now 9th and 7th graders, and both participate in sports.

[¶ 4] On April 21, 2009, Dufner moved for reduction of Trottier's visitation. Dufner claimed a reduction would be in the children's best interests because the current visitation schedule conflicts with the children's extracurricular activities, resulting in conflict between the parents and unreasonable travel demands on the children. Trottier filed a response brief on May 6, 2009, alleging the purpose of Dufner's request was to alienate her from the children. On May 21, 2009, Trottier filed a motion requesting that custody be modified to give her primary physical custody of the children. Trottier's supporting brief indirectly requested an evidentiary hearing on the matter. Also on May 21, 2009, Trottier moved for a stay of the visitation hearing scheduled for May 26, 2009. Trottier's motion to stay was effectively denied when the visitation hearing was held on May 26, 2009. The district court conducted an in-chambers interview with the parties' two children on May 28, 2009. On July 6, 2009, the district court ordered Trottier's visitation be reduced and denied Trottier's request for an evidentiary hearing on her motion to modify custody. The district court concluded,

"Trottier has failed to establish a prima facie case that a material change in circumstances has occurred to justify a change of custody. In this case, the children are doing [well] in the physical care of Dufner and the only change that has occurred is that the children have become young adolescents who, like others [sic] children of divorce, simply want a say in the visitation schedule. Consequently, it is appropriate to modify the visitation schedule to address what is needed for young adolescent children but it is not appropriate to change custody."

[¶ 5] Trottier timely filed this appeal.

II

[¶ 6] Trottier argues the district court erred by reducing her visitation because the court placed disproportionate weight on the children's preference to live

with Dufner. "A district court's decision to modify visitation is a finding of fact, which will not be reversed unless clearly erroneous." *Hanson v. Hanson*, 2005 ND 82, ¶ 20, 695 N.W.2d 205. "A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, there is no evidence to support it, or if, although there is some evidence to support the finding, on the entire evidence, we are left with a definite and firm conviction a mistake has been made." *Kienzle v. Selensky*, 2007 ND 167, ¶ 14, 740 N.W.2d 393. This Court "do[es] not reweigh evidence or reassess witness credibility when the evidence supports the [district] court's findings." *Id.* To modify visitation, the moving party must demonstrate that a material change in circumstances has occurred since entry of the previous visitation order and that the modification is in the best interests of the child. *Ibach v. Zacher*, 2006 ND 244, ¶ 8, 724 N.W.2d 165.

**A**

■ [¶ 7] For purposes of modifying visitation, a material change of circumstances occurs when important new facts arise that were unknown at the time of the initial visitation order. *Helfenstein v. Schutt*, 2007 ND 106, ¶ 18, 735 N.W.2d 410. In *Reinecke v. Griffeth*, a material change of circumstances existed when the visitation schedule allowing the non-custodial parent two weeknight visits during the school year caused conflict between the parents, behavioral problems for the children at home and poor performance at school. 533 N.W.2d 695, 698–99 (N.D. 1995).

■ [¶ 8] Here, the district court found a material change of circumstances based on the children's increased time demands for extracurricular activities, the children's desire to spend more time with Dufner at his Buxton home and the chil-

dren's exposure to the conflict between Dufner and Trottier over the visitation schedule. The record reflects that both children participate in high school sports and that the after-school and weekend time requirements of their activities has increased significantly since the original visitation schedule was established. The conflict over Trottier's weekend visits stems from the increased time requirements and particularly from the children's practices and games on Friday nights and Saturdays. Affidavits from both Dufner and Trottier demonstrate the contention over when Trottier's visitation begins and who is required to provide transportation when the children have weekend activities. The record also supports the children's preference to live with Dufner. The children stated that they prefer to live with Dufner because his Buxton home is significantly closer to their school and friends than is Trottier's Grand Forks home. Finally, though not cited as a material change of circumstances, both Dufner and Trottier have remarried and live with their new spouses at their respective residences. *See Reinecke*, 533 N.W.2d at 698 (relying on implied findings of fact to interpret trial court's conclusion). Evidence in the record indicates the district court did not err in determining a material change of circumstances has occurred since visitation was last addressed.

**B**

■ [¶ 9] Trottier argues the district court erred when it determined reducing her visitation would be in the children's best interests because the court placed disproportionate weight on the children's preference. Another requirement to modify visitation is demonstrating that the modification is in the best interests of the child. *Ibach*, 2006 ND 244, ¶ 8, 724 N.W.2d 165. Our case law sets forth the

standard to determine if a modification is in a child's best interests. In *Reinecke*, we upheld the district court's determination that it was in the best interests of the children to modify the existing visitation schedule. 533 N.W.2d at 698–99. The original visitation order in *Reinecke* interfered with the children's weeknight routine, contributing to behavioral problems at home, poor performance at school and causing conflict between the parents. *Id.* After upholding the district court's modified visitation schedule, we stated,

> "Conflict over visitation can pose harm to the emotional welfare of the children caught in the middle. The trial court's modified visitation schedule provides a creative solution to what had become a source of contention between the parties."

*Id.* at 699 (internal citation omitted). A similar analysis applies here.

[¶ 10] The district court found that the children are frustrated with the incessant bickering between Dufner and Trottier. Multiple and voluminous affidavits support the court's finding that "the almost constant conflict which occurs between Dufner and Trottier [is] over the visitation schedule." Continually exposing a child to adult conflict is not in that child's best interests. *See, e.g., In re T.T.*, 2004 ND 138, ¶ 2, 681 N.W.2d 779 (affirming juvenile court's finding of a deprived child based on parental alienation and exposure to adult conflict from the parents' divorce). The district court did not err by determining it is in the children's best interests to modify visitation. The modification of visitation is affirmed.

### III

[¶ 11] Trottier argues the district court erred by not holding an evidentiary hearing on her motion to modify custody because the same material change of circumstances supporting modification of visitation required the court to hold an evidentiary hearing. This Court applies a de novo standard to review the denial of an evidentiary hearing on a motion to change custody. *Green v. Green*, 2009 ND 162, ¶ 5, 772 N.W.2d 612.

[¶ 12] Custody orders can be modified under N.D.C.C. § 14–09–06.6(6) only after a court finds that a material change of circumstances exists and that the modification is necessary to serve the best interests of the child. Though similar, the standard to modify custody is different from the standard to modify visitation. *Simburger v. Simburger*, 2005 ND 139, ¶ 13, 701 N.W.2d 880. Notably, Trottier neither offers nor could we find any authority for the proposition that a district court's finding of a material change of circumstances sufficient to modify visitation automatically constitutes a material change of circumstances sufficient to modify custody. To the contrary, district courts have substantial discretion in matters related to custody, and imposing such a rigid rule of law would unduly limit the district court's ability to pursue children's best interests. *Krank v. Krank*, 2003 ND 146, ¶ 6, 669 N.W.2d 105. Therefore, Trottier is incorrect in her assertion that the district court erred by finding a material change of circumstances sufficient to modify visitation but not sufficient to modify custody.

[¶ 13] Another significant difference between proceedings to modify visitation and proceedings to modify custody is the source of governing law. Modification of visitation proceedings are governed by a standard established through case law, while modifications of custody are governed by N.D.C.C. § 14–09–06.6, which "includes several provisions for parties seeking a custody modification that we

have never required for a modification of visitation, including the requirement that the movant establish a prima facie case prior to entitlement of an evidentiary hearing." *Simburger,* 2005 ND 139, ¶ 13, 701 N.W.2d 880 (citing N.D.C.C. § 14–09–06.6(4)). Movants seeking an evidentiary hearing can only use moving papers and supporting affidavits to establish a prima facie case. N.D.C.C. § 14–09–06.6(4).

[¶ 14] Here, Trottier's request for an evidentiary hearing on her motion to modify custody was properly accompanied by a brief and supporting affidavits. Before the district court's July 6, 2009 order denying Trottier's request for an evidentiary hearing, the court interviewed the parties' children in-chambers, seeking their input on matters related to custody and visitation. In its July 6, 2009 order, the district court stated,

"This Court had the opportunity to have a one on one in-chambers discussion[ ] with each child. Both children indicated they are involved in extra-curricular activities at school which they enjoy and they are very happy with their school. They enjoy living on the farm and having the opportunity to earn their own income by working for their dad. [One child] stated that he did not feel he was forced to work on the farm and stated that he enjoyed the farm work so much that he didn't even view it as a job. Having had a chance to speak with the children individually and having reviewed the affidavits and supporting exhibits, this Court is convinced the children are bright, well-adjusted and very happy under the physical custody of Dufner. There is no reason to disrupt this custodial placement."

■ [¶ 15] Section 14–09–06.6(4), N.D.C.C., requires that attempts to establish a prima facie case justifying modification of custody be considered on briefs and supporting affidavits and without oral arguments or an evidentiary hearing. It is apparent the district court improperly based its decision to deny Trottier an evidentiary hearing, at least in part, on its in-chambers interview of the parties' children. Therefore, the district court erred as a matter of law when it considered its in-chambers interviews to determine if Trottier established a prima facie case supporting modification of custody.

■ [¶ 16] The party seeking to modify custody bears the burden of establishing a prima facie case that a material change of circumstances has occurred. N.D.C.C. § 14–09–06.6(8). "A prima facie case does not require facts which, if proved, would mandate a change of custody as a matter of law. A prima facie case only requires facts which, if proved at an evidentiary hearing, would support a change of custody that could be affirmed if appealed." *Frueh v. Frueh,* 2008 ND 26, ¶ 6, 745 N.W.2d 362. In the context of modifying custody, a material change of circumstances can exist when a parent remarries, when there has been an attempt to alienate a child's affection for a parent or when parents are openly hostile towards each other and the hostility negatively affects their children. *Mosbrucker v. Mosbrucker,* 1997 ND 72, ¶ 10, 562 N.W.2d 390; *Siewert v. Siewert,* 2008 ND 221, ¶ 18, 758 N.W.2d 691.

■ [¶ 17] Trottier supported her motion to modify custody with an affidavit indicating both she and Dufner have remarried. Trottier's affidavit also demonstrated the parties' animosity and alleged Dufner and his new wife were attempting to alienate Trottier from her children. The moving papers and affidavits submitted in support of Trottier's motion to modify custody established a prima facie case that there has been a material change of circumstances. Therefore, the district

court's order denying Trottier's request for an evidentiary hearing is reversed, and this case is remanded for an evidentiary hearing on Trottier's motion to modify custody.

### IV

[¶ 18] We affirm the district court's judgment modifying visitation, but we reverse the district court's order denying Trottier's request for an evidentiary hearing on her motion to modify custody and remand for an evidentiary hearing on the same.

[¶ 19] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, CAROL RONNING KAPSNER, and DALE V. SANDSTROM, JJ., concur.

VANDE WALLE, Chief Justice, concurring in the result.

[¶ 20] I concur in the result reached by the majority opinion. I write separately to note that while we affirm the trial court's order modifying the parenting schedule, that order is interlocutory when a motion to change primary residential responsibility is also pending. Should the motion for a change in primary residential responsibility be granted a new parenting schedule would be necessary. Ordinarily, when a motion to modify the parenting schedule and a motion to modify primary residential responsibility are both pending, the motion to modify primary residential responsibility should be decided before the motion to modify the parenting schedule is decided. Here, the trial court denied the motion to change primary residential responsibility and granted the motion to modify the parenting schedule. Both matters are therefore before us on appeal. Thus, although today we affirm the change in the parenting schedule, our affirmance is necessarily subject to the trial court's determination of primary residential responsibility on remand.

[¶ 21] GERALD W. VANDE WALLE, C.J.